IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| GERALD L. BRADLEY,<br>Petitioner, | §<br>§<br>§ | |
| v. | § | Civil Action No. 4:11-CV-234-Y |
| | § | |
| RICK THALER, Director,<br>Texas Department of Criminal Justice,<br>Correctional Institutions Division,<br>Respondent. | §<br>§<br>§<br>§ | |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE
### AND NOTICE AND ORDER

This cause of action was referred to the United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b), as implemented by an order of the United States District Court for the Northern District of Texas. The Findings, Conclusions, and Recommendation of the United States Magistrate Judge are as follows:

### I. FINDINGS AND CONCLUSIONS

#### A. NATURE OF THE CASE

This is a petition for writ of habeas corpus by a state prisoner under 28 U.S.C. § 2254.

#### B. PARTIES

Petitioner Gerald L. Bradley, TDCJ-ID #1413012, is a state prisoner in custody of the Texas Department of Criminal Justice, Correctional Institutions Division, in Tennessee Colony, Texas.

Respondent Rick Thaler is the Director of the Texas Department of Criminal Justice, Correctional Institutions Division.

## C. FACTUAL AND PROCEDURAL HISTORY

Petitioner was charged with sexually assaulting and fondling K.G., his step-granddaughter, in 2003 in Tarrant County, Texas, Case No. 0918827D. (State Habeas R. at 120) The state appellate court summarized the factual background as follows:

> The complainant in this case is K.G., who was twelve or thirteen years old at the time of the alleged offenses and sixteen at the time of trial. Appellant is K.G.'s paternal step-grandfather. K.G. testified that on two occasions when she spent the night at Appellant's home, [in a studio called "the shed" in the back yard,] Appellant gave her alcohol to drink and later–while she was trying to sleep–sexually assaulted her. K.G. eventually made an outcry to her cousin and her aunt.
>
> The grand jury indicted Appellant for one count of aggravated sexual assault and one count of indecency with a child by sexual contact arising from the first incident (counts one and two) and one count of aggravated sexual assault and two counts of indecency with a child by sexual contact arising from the second incident (counts three, four, and five). The trial court submitted counts one through four to the jury. The jury found Appellant guilty on each of the four counts and assessed punishment at thirty years' confinement on each of counts one and two and sixty years' confinement on each of counts three and four. The trial court sentenced Appellant accordingly . . . .

(*Id.* at 124-25)

The Second District Court of Appeals of Texas affirmed the trial court's judgment, and the Texas Court of Criminal Appeals refused petitioner's petition for discretionary review. (*Id.* at 140) *Bradley v. Texas*, PDR No. 1714-06. Petitioner also filed a state application for habeas corpus relief, raising one or more of the issues presented herein, which was denied by the Texas Court of Criminal Appeals on the findings of the trial court. (State Habeas R. at cover) This federal petition for habeas corpus relief followed.

2

### D. ISSUES

In four grounds, petitioner complains of ineffective assistance of counsel (grounds one and two) and abuse of discretion by the trial court (grounds three and four). (Pet. at 7-8; Pet'r Mem. in Support at 4)

### E. RULE 5 STATEMENT

Respondent asserts that petitioner has failed to exhaust one of his abuse-of-discretion claims (ground four), but that the petition is not otherwise barred by limitations or subject to the successive-petitioner bar. 28 U.S.C. §§ 2244(b), (d)(1) & 2254(b)(1).

### F. DISCUSSION

#### 1. *Legal Standard for Granting Habeas Corpus Relief*

Under 28 U.S.C. § 2254(d), a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless he shows that the prior adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court. 28 U.S.C. § 2254(d). A decision is contrary to clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court of the United States on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *see also Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). A state court decision will be an unreasonable application of clearly established federal law if it

correctly identifies the applicable rule but applies it unreasonably to the facts of the case. *Williams*, 529 U.S. at 407-08.

The statute further requires that federal courts give great deference to a state court's factual findings. *Hill*, 210 F.3d at 485. Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. When the Texas Court of Criminal Appeals denies relief in a state habeas corpus application without written opinion, typically it is an adjudication on the merits, which is entitled to the presumption. *Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997). Under these circumstances, a federal court may assume that the state court applied correct standards of federal law to the facts, unless there is evidence that an incorrect standard was applied. *Townsend v. Sain*, 372 U.S. 293, 314 (1963)[1]; *Catalan v. Dretke*, 315 F.3d 491, 493 n.3 (5th Cir. 2002); *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001). The petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003); *Williams*, 529 U.S. at 399.

## 2. *Ineffective Assistance of Counsel*

Petitioner claims trial counsel was ineffective by violating his right to "confront" witnesses against him and by failing to keep out improper outcry testimony. (Pet. at 7; Pet'r Mem. in Support at 8-12)

A criminal defendant has a constitutional right to the effective assistance of counsel at trial. U.S. CONST. amend. VI, XIV; *Strickland v. Washington*, 466 U.S. 668, 688 (1984). An ineffective

---

[1] The standards of *Townsend v. Sain* have been incorporated into 28 U.S.C. § 2254(d). *Harris v. Oliver*, 645 F.2d 327, 330 n.2 (5th Cir. 1981).

4

assistance claim is governed by the standards set forth in *Strickland v. Washington.* 466 U.S. at 668. To establish ineffective assistance of counsel a petitioner must show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that but for counsel's deficient performance the result of the proceeding would have been different. *Id.* at 688. Both prongs of the *Strickland* test must be met to demonstrate ineffective assistance. *Id.* at 687, 697. Judicial scrutiny of counsel's performance must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight. *Id.* at 689.

Where a petitioner's ineffective assistance claims have been reviewed on the merits under the *Strickland* standard and denied by the state courts, federal habeas relief will be granted only if the state courts' decision was contrary to or involved an unreasonable application of *Strickland*, or if the state courts' decision is based on an unreasonable determination of the facts in light of the evidence before the state court. *Bell v. Cone*, 535 U.S. 685, 698-99 (2002); *Haynes v. Cain*, 298 F.3d 375, 379-82 (5th Cir. 2002). Under this standard, the state court's application of *Strickland* must be shown to be not only erroneous, but objectively unreasonable. *Yarborough v. Gentry*, 540 U.S. 1, 4 (2003).

The state habeas judge, who also presided over petitioner's trial, conducted a hearing by affidavit on petitioner's ineffective assistance claims. (State Habeas R. at 64-67) After considering counsel's affidavit, the habeas judge adopted the state's proposed findings of fact and conclusions of law, with exceptions, determined that petitioner had failed to prove ineffective assistance on counsel's part or prejudice under *Strickland*, and recommended denial of petitioner's application. (*Id.* at 104-119) The application was then forwarded to the Texas Court of Criminal Appeals, which denied the application without written order on the findings of the trial court. (*Id.* at cover) As

previously noted, this constitutes an adjudication on the merits by the highest state court and is entitled to the presumption of correctness. Under these circumstances, a federal court may assume that the state court applied the *Strickland* standard to petitioner's claims, unless there is evidence that an incorrect standard was applied. *Townsend v. Sain*, 372 U.S. 293, 314 (1963)[2]; *Pondexter v. Dretke*, 346 F.3d 142, 148 (5th Cir. 2003); *Catalan v. Cockrell*, 315 F.3d 491, 493 n.3 (5th Cir. 2002). Thus, assuming the Texas Court of Criminal Appeals applied *Strickland* to the factual findings, we defer to the state court's adjudication of the claims unless it appears the decision was contrary to or involved an unreasonable application of *Strickland* or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence in the state court proceedings. Having independently reviewed petitioner' ineffective-assistance claims and the record of the state courts' proceedings, this court cannot say that the state courts' adjudication of petitioner's ineffective assistance claims is contrary to or involved an unreasonable application of *Strickland* or that it was based on an unreasonable determination of the facts as presented in the state courts.

Petitioner claims his trial counsel was ineffective by violating his right to confront witnesses. (Pet. at 7; Pet'r Mem. in Support at 9–9) This claim is actually a claim that counsel was ineffective by failing to call witnesses on his behalf. Specifically, petitioner claims counsel should have subpoenaed and called T.G., K.G.'s cousin, and T.G.'s parents Dorothy and Travis Gray, K.G.'s aunt and uncle, to testify as to K.G.'s veracity and to testify that T.G. also spent the night in the shed at petitioner's on one or both occasions in question, that petitioner was not present during the times involved, that nothing unusual happened, and that the door to the shed is very hard to open and

---

[2]The standards of *Townsend v. Sain* have been incorporated into 28 U.S.C. § 2254(d). *Harris v. Oliver*, 645 F.2d 327, 330 n.2 (5th Cir. 1981).

6

makes a loud noise when opened and closed that would wake any person. (Pet'r Mem. in Support at 8-9; State Habeas R. at 55-57) Counsel responded to this allegation as follows:

> Mr. Bradley was accused of fondling and penetrating the vagina of his wife's granddaughter, [K.G.] The sexual assault was supposed to have occurred while Pamela and her grandchildren, [K.G.] and [T.G.], were sleeping in a shed that had been converted into a game room or den. I interviewed Mr. Bradley and his wife, Pam Bradley. They both told me that Mr. Bradley was never in the room when she and the children would go to sleep. Mr. Bradley would leave the room after playing games on the computer. Pam Bradley would close and lock the door before going to sleep. I hired Gilbert Towns to investigate this case. Mr. Towns interviewed Mr. Bradley and his wife, and they told him the same thing. Mr. Towns also went to Katy, Texas to interview the victim and her parents. The victim's father, Cary Gray, refused to allow Mr. Towns to talk to him, his wife or the victim. Mr. Towns did receive a call from [T.G.'s] father, Curtis Gray. Curtis is Cary's brother. Curtis advised that [T.G.] was present when the alleged assault was supposed to have happened. He advised that [T.G.] did not see the assault and that Mr. Bradley had never even come into the room. Curtis said he and his wife, Dorothy, did not believe [K.G.]. Curtis advised Mr. Towns that he would only testify if subpoenaed, and he would lose his brother forever if he did testify. Curtis also advised Mr. Towns that he would not let Mr. Towns talk to his son, [T.G.], until the trial. I have attached a copy of Mr. Towns' reports . . . to this affidavit.
>
> It was clear to me that the only potential eye witnesses in this case were Pamela, [T.G.], [Kelly G.], [E.G.] and [K.G.]. [Kelly G.] and [E.G.] were [T.G.'s] younger sisters. Neither Dorothy, Curtis, Mr. Bradley nor Pam ever told me that [Kelly G.] or [E.G.] had any information pertaining to this case. I interviewed Pam[] and was denied access to [T.G.] and [K.G.]. Therefore, I do think that I conducted an adequate investigation of this case through myself and Mr. Towns. I did call Pam Bradley as a witness. Pam was able to testify to the sleeping arrangements, the layout of the room and the loud door. It is true that Dorothy and Curtis could also have testified about the sleeping arrangements, the layout of the room and the loud door as well as their opinion of [K.G.]'s veracity. (I believe the Rule of Evidence would have prohibited them from testifying to specific acts of misconduct regarding alcohol e.g. Rules 401, 403, 404(b) and 609(b)). However, as trial approached, Mr. Towns told me that Curtis and Dorothy did not want to get involved. I did not feel the benefits of putting Curtis and Dorothy on the stand were worth the risks given that I now felt that they were potentially hostile. I dispute that Dorothy and Curtis told me they would have been willing to testify as they said in their affidavits. I did not subpoena [T.D.] because I did not want to call a witness to the stand without getting to talk to him before trial. I had no way of knowing for sure what he would say, and again, it was my understanding that Curtis and Dorothy did not want their family

> involved because of the effect that would have on their relationship with the rest of the family. This made them and their son potentially hostile.

(State Habeas R. at 64-66, 68-73 (investigative reports))

Based on the affidavit of trial counsel, the state habeas judge, who also presided over petitioner's trial, entered findings consistent with counsel's affidavit, and supported by the investigator's reports, and found counsel's decision not to call Dorothy, Curtis and T.G. as witnesses was the result of reasonable trial strategy. Thus, the court concluded petitioner had failed to prove he received ineffective assistance of counsel. (State Habeas R. at 107-19) Weighing the credibility of the affiants was the role of the state habeas court. *Pippin v. Dretke*, 434 F.3d 782, 792 (5th Cir. 2005). Furthermore, the record reflects Curtis Gray was, in fact, called as a defense witness during the guilt/innocence phase of petitioner's trial. Nevertheless, complaints of ineffective assistance of counsel based on uncalled witnesses are not favored in federal habeas corpus review because presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have stated are largely speculative. *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985).

Petitioner claims counsel was ineffective by failing to keep out improper "outcry" testimony by Lisa Bench, K.G.'s aunt. (Pet'r Mem. in Support at 10-12) Bench "testified that she told the victim's parents what the victim had told her, and then testified that she told them that [petitioner] had sexually molested the victim by sticking his fingers inside her." (State Habeas R. at 118)

Under state statute in effect at the time of the offense, an outcry statement made by a child victim twelve years of age or younger to the first person, 18 years of age or older, was an exception to the hearsay rule and admissible, provided certain requirements were met. *See* Acts of May 11,

8

1995, 74th Leg., ch. 76, § 14.24, 1995 Tex. Gen. Laws 458, 834. Because K.G. was 13 at the time of the offense, petitioner claims that Bench's testimony regarding K.G.'s statements to her about the incidents was inadmissible hearsay, that counsel should have objected to Bench's testimony accordingly, and that Bench's testimony was harmful because there was no other evidence to corroborate K.G.'s testimony, save for K.G.'s "vague statement to the sexual nurse examiner." (Pet'r Mem. in Support at 10) Counsel responded to this allegation as follows:

> The evidence elicited from Lisa Bench was not hearsay. Lisa was asked by Mitch Poe, the prosecutor, to relate only what she said to [K.G.] and not what [K.G.] said to her. Rule 803 classifies statements from third parties as hearsay. The witness can always relate on the stand what the witness said to someone outside the courtroom without violating Rule 803. In fact, I did object to hearsay very early on in Lisa's testimony, and the objection was sustained. Mitch Poe instructed the witness that she could not testify to what someone else told her. When Lisa started to repeat what [K.G.] told her at another point in her testimony, I again objected to hearsay, and that was also sustained. When Mitch Poe asked Lisa to testify to what she told [K.G.]'s parents, he instructed her that she could not repeat what [K.G.] had told her. . . .

(State Habeas R. at 66) (citations to the record omitted)

The state habeas court entered findings of fact largely consistent with counsel's affidavit, however the court found that Bench's testimony about what the victim told her–*i.e.*, that she was sexually assaulted by a man and that she was only fondled, was hearsay. (*Id.* at 105-07, 112) Nevertheless, the state court concluded that because the testimony was not specific as to (1) whom, (2) specifically how, or (3) how many times the victim was sexually assaulted, the testimony did not implicate petitioner and was not impermissible hearsay; thus, petitioner failed to prove counsel's representation fell below an objective standard of reasonableness. (*Id.*) The court also noted that under Texas law, the testimony of the child victim alone is sufficient to support a conviction for sexual abuse and that, given K.G.'s specific account of the events, petitioner failed to show a

9

reasonable probability that, but for counsel's failure to object to Bench's testimony, the result of his trial would have been different. (*Id.* at 112-13) In light of the state court's determination of the issue, any objection on counsel's part would have been futile. Counsel is not required to make futile motions or objections. *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994); *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990). Furthermore, assuming the jury believed K.G.'s version of events, the state court's conclusion that petitioner could not show prejudice is reasonable.

### 3. *Improper Jury Argument*

Petitioner claims he was denied due process of law in that the state was allowed to make improper closing argument. (Pet. at 7; Pet'r Mem. in Support at 13-14) Specifically, he appears to complain of the following argument:

> [I]t's not really about [K.G.] It's about Gerald Bradley and what he did to [K.G.] *and what we're going to do about it as a community. We have to come together*, and we don't allow children to be abused in our community.
> . . .
>
> Well, *the police are involved. I'm involved, and now you're involved and we can't step away. We have a duty to our community* . . . .

(RR, vol. 4, at 162, 164 (emphasis added))

The state appellate court addressed this claim on appeal as follows:

> To be permissible, the State's jury argument must fall within one of the following four general areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; or (4) plea for law enforcement.
>
> A proper plea for law enforcement may take many forms, one of which is to argue the relationship between the jury's verdict and the deterrence of crime in general. A prosecutor may argue that juries should deter specific crimes by their verdict. The State may also argue the impact of the jury's verdict on the community. The State may not, however, argue that the community or any particular segment of the community expects or demands either a guilty verdict or a particular punishment.

10

> A prosecutor does not necessarily make an improper appeal to the community's desires just by referring to the community during argument.
>
> We cannot say that the prosecutor's argument was an attempt to induce the jury to convict Appellant because the community desired or expected a conviction. The prosecutor's statement that the community will not tolerate child abuse was a proper plea for law enforcement; in essence, the prosecutor asked the jury to deter specific crimes by their verdict.

(State Habeas R. at 138-39 (citations omitted))

Petitioner asserts the appellate court's determination that the argument was proper was erroneous because the argument was not about "crime in general," but, instead, "specifically highlighted 'our community,' and Petitioner (personally) and the jury – from a defendant in criminal proceedings. This had the effect of the State pre-convicting Petitioner for the jury by appealing to class prejudice. . . . The State, in essence, tells the jury that they are in a different class than a defendant; evoking bias." (Pet'r Mem. in Support at 13)

This court must defer to the state court's determination of state law. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). Furthermore, improper jury argument by the state does not present a claim of constitutional magnitude in a federal habeas action unless it is so prejudicial that the state court trial was rendered fundamentally unfair. *Jones v. Butler*, 864 F.2d 348, 356 (5th Cir. 1988). To establish that a prosecutor's remarks are so inflammatory, the petitioner must demonstrate that the misconduct is persistent and pronounced or that the evidence of guilt was so insubstantial that the conviction would not have occurred but for the improper remarks. The prosecutor's remarks must infect the trial with such unfairness as to make the resulting conviction a denial of due process. *Bell v. Lynaugh*, 828 F.2d 1085, 1095 (5th Cir. 1987). A prosecutor's argument, by itself, is a

11

constitutional violation in only the most egregious cases. *Ortega v. McCotter*, 808 F.2d 406, 410 (5th Cir. 1987).

The complained-of jury argument was neither persistent or pronounced nor was it so egregious as to undermine confidence in the outcome of petitioner's trial. Furthermore, the evidence of petitioner's guilt was not so insubstantial that, absent the remarks, the convictions probably would not have occurred.

### 4. *Extraneous Offense Evidence*

Petitioner claims the trial court abused its discretion by admitting evidence of extraneous bad acts and offenses. (Pet. at 8; Pet'r Mem. in Support at 15-17) Specifically, petitioner complains of the admission of evidence that petitioner gave K.G. and T.G. alcohol and evidence that petitioner "got probation" for an offense allegedly committed twenty years before trial. (Pet'r Mem. in Support at 15-17) Respondent contends this claim is unexhausted and procedurally defaulted because the claim was not presented to the Texas Court of Criminal Appeals by petition for discretionary review or state habeas review. (Resp't Ans. at 29-30)

Applicants seeking habeas corpus relief under § 2254 are required to exhaust all claims in state court before requesting federal collateral relief. 28 U.S.C. § 2254(b)(1); *Fisher v. Texas*, 169 F.3d 295, 302 (5th Cir. 1999). The exhaustion requirement is satisfied when the substance of the federal habeas claim has been fairly presented to the highest court of the state. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-48 (1999); *Fisher*, 169 F.3d at 302; *Carter v. Estelle*, 677 F.2d 427, 443 (5th Cir. 1982). In Texas, the highest state court for criminal matters is the Texas Court of Criminal Appeals. *Richardson v. Procunier*, 762 F.2d 429, 431-32 (5th Cir. 1985). Thus, a Texas prisoner may satisfy the exhaustion requirement by presenting both the factual and legal substance of a claim

12

to the Texas Court of Criminal Appeals in either a petition for discretionary review or a state habeas corpus proceeding pursuant to article 11.07 of the Texas Code of Criminal Procedure in a procedurally proper manner. TEX. CODE CRIM. PROC. ANN. art. 11.07 (Vernon Supp. 2010); *Depuy v. Butler*, 837 F.2d 699, 702 (5th Cir. 1988).

Because this claim was raised for the first time in this federal petition, the claim is unexhausted. Under the Texas abuse-of-the-writ doctrine, however, petitioner cannot now return to state court for purposes of exhausting the claim. TEX. CODE CRIM. PROC. ANN. art. 11.07, § 4. The abuse-of-the-writ doctrine represents an adequate state procedural bar to federal habeas review. *Nobles v. Johnson*, 127 F.3d 409, 423 (5th Cir. 1997). Therefore, absent a showing of cause and prejudice or a miscarriage of justice, such showing not having been demonstrated, petitioner's claim raised for the first time in this federal petition is procedurally barred from this court's review. *Smith v. Johnson*, 216 F.3d 521, 523-24 (5th Cir. 2000).

### 5. *Evidentiary Hearing*

Petitioner requests an evidentiary hearing to further develop the record in support of his claims, however federal habeas review of state-court proceedings are limited to the record before the state court that adjudicated the claims on the merits. *Cullen v. Pinholster*, — U.S. —, 131 S. Ct. 1388, 1398-1401 (2011). Petitioner's claims were adjudicated on the merits in state court, and he has failed to overcome the limitation of § 2254(d)(1) on the record that was before the state court. *Id.*

## II. RECOMMENDATION

Based on the foregoing, it is recommended that petitioner's petition for writ of habeas corpus be DENIED.

### III. NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 10 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The court is extending the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation until February 16, 2012. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

### IV. ORDER

Under 28 U.S.C. § 636, it is ordered that each party is granted until February 16, 2012, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation. It is further ordered that if objections are filed and the opposing party chooses to file a response, a response shall be filed within seven (7) days of the filing date of the objections.

It is further ordered that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED January __30__, 2012.

_____
JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE